# Jeffrey Burr v. Joyce Burr

[531 A.2d 915]

No. 85-340

Present: **Allen, C.J., Peck, J., and Barney, C.J. (Ret.), and Costello, D.J. (Ret.),[1] Specially Assigned**

Opinion Filed June 26, 1987

*Allan R. Keyes* and *Joseph H. Badgewick* of *Ryan Smith & Carbine, Ltd.*, Rutland, for Plaintiff-Appellant.

---

[1] Judge Costello was present for oral argument but did not participate in the decision.

*M. Jerome Diamond* and *Suzanne R. Brown*, Law Clerk (On the Brief), of *Diamond & Associates, P.C.*, Montpelier, for Defendant-Appellee.

**Peck, J**. The parties were granted a divorce by the Orange Superior Court on grounds that they had lived separate and apart for six consecutive months and that resumption of marital relations was not reasonably probable. The defendant, Joyce Langebartels Burr, appeals the lower court's distribution of marital property, arguing that it was based on inadequate findings of fact. The plaintiff, Jeffrey Burr, cross-appeals, urging that the property division should have been made pursuant to the terms of an earlier stipulation between the parties. We affirm.

After their marriage in 1968, defendant worked full-time as a school teacher, and plaintiff, after four years of college, was employed in several occupations. In 1977, the parties purchased an established family clothing business. The parties were co-signors and guarantors with respect to the financing, which was for the entire purchase price of $52,500. An additional $10,000 was placed into a checking account as working capital. Of this latter amount, $7,500 was a gift from defendant's parents and $2,500 was derived from the parties' savings. Plaintiff managed the store, and defendant worked there part-time in addition to teaching on a full-time basis. In 1979, plaintiff was able to purchase the building in which the store was located.

In August of 1980, the parties separated. Defendant began to have much less contact with the store, and accounting procedures were changed so that the business paid rent to the parties in their role as building owners. In 1981, plaintiff liquidated the assets of the store and ceased retail operations. He used a portion of the proceeds to pay off a mortgage on the building and treated the balance as personal income. In 1982, plaintiff leased the building to a local bank on a very favorable, long-term basis, with the payments beginning at $24,000 per year. Since that time, plaintiff has been otherwise unemployed and has considered the lease income to be his salary. However, he contributed $20,544 to the defendant for expenses over the period of the separation.

Plaintiff brought a divorce action in January of 1983. When the final hearing occurred a year later, the parties had not reached an agreement regarding property division. After testimony began on the morning of the hearing, the trial court recognized that inade-

quate time had been scheduled and asked whether the parties wanted to take "five or ten minutes" to negotiate a resolution. The court noted that completion of the hearing would require a second day of testimony if no agreement was reached. The parties spent the balance of the day in active negotiations without a break. The court monitored the progress of the negotiations closely by sending a clerk to the meeting room and, on one occasion, by checking with the attorneys himself. Late in the afternoon, and apparently after being told that "the court wanted to go home," the parties reached agreement and signed a stipulation. The court accepted the stipulation and asked counsel to prepare an order granting the divorce. The following morning, defendant called her counsel, expressed dissatisfaction with the stipulation, and stated that she had felt undue pressure to accept it. A motion to set aside the stipulation was filed immediately on behalf of defendant. At the hearing on the motion, both parties testified that they had felt great pressure to reach agreement. The presiding judge and the assistant judge sitting on the case agreed that this perception of pressure justified setting aside the stipulation and that a new hearing should be scheduled in front of a different judge. Plaintiff's petition to appeal this decision was denied, and the case was heard on its merits in June of 1985.

■ As a threshold matter, we must consider plaintiff's claim on cross appeal that the lower court erred in setting aside the stipulation of the parties. A trial court may be justified in refusing to honor such a stipulation in the presence of fraud, unconscionable advantage, impossibility of performance, hampering circumstances beyond the expectation of the parties, collusion, or duress. *Harrigan* v. *Harrigan*, 135 Vt. 249, 250-51, 373 A.2d 550, 552 (1977). Here, the court acknowledged that its actions and the situation had placed substantial pressure on both parties, and the setting aside of the resulting stipulation was not erroneous.

■■ Defendant's primary contention on appeal is that the distribution of marital property, as ordered by the trial court after the final hearing, is inequitable. In divorce cases, the trial court is vested with broad discretion in making property dispositions, and such an order will not be disturbed on appeal unless it can be shown that this discretion was abused, withheld, exercised on untenable grounds, or exercised to a clearly unreasonable extent. *Roberts* v. *Roberts*, 146 Vt. 498, 499, 505 A.2d 676, 677 (1986). Here, based on the court's findings, it appears that plaintiff re-

ceived approximately fifty-six percent of the marital property while defendant received forty-four percent. This division is not so disproportionate on its face to require exceptional scrutiny on review. Cf. *Hendrick* v. *Hendrick*, 142 Vt. 357, 359-60, 454 A.2d 1251, 1252-53 (1982) (closer examination justified where property award to one party at least four times greater than award to other party). All that is required of such distributions is that they be equitable. *Victor* v. *Victor*, 142 Vt. 126, 130, 453 A.2d 1115, 1117 (1982). Because individual circumstances are considered by the court, equality is not a necessary predicate to equity. *Daitchman* v. *Daitchman*, 145 Vt. 145, 151, 483 A.2d 270, 273 (1984). Here, the court below made extensive findings of fact regarding the relative contributions of plaintiff and defendant, and the resulting property disposition appears appropriate.

■ Defendant seeks to buttress her argument by attacking the adequacy of the court's findings. It is true that a trial court's discretion under 15 V.S.A. § 751 is not so broad that inadequate findings of fact will evade review. *Field* v. *Field*, 139 Vt. 242, 244, 427 A.2d 350, 352 (1981). But a finding of fact will not be set aside unless, when the supporting evidence is viewed in the light most favorable to the prevailing party and the effects of modifying evidence are excluded, it is clearly erroneous. *Vieweger* v. *Clark*, 144 Vt. 630, 632, 481 A.2d 1268, 1270 (1984). Here, defendant challenges the adequacy of Finding No. 35, which states:

> [S]ince the separation in 1980, plaintiff has collected rent on the business building. He collected rent from August 1980 through 1981 from [the clothing store] and then from 1982 through 1985 from [the bank]. He collected his salary from [the store] until 1981, and since that time he has received all of the lease money. The amount collected between 1982 and 1984 was considered to be a salary by the plaintiff. It is an increase over his former salary, but it is a compensation for the result achieved [sic] by the plaintiff in the lease agreement. It was through his management that the property has been so much more successful since 1982. The increase in salary recognizes plaintiff's contribution. The plaintiff determined and considered this to be his salary and the Court so finds. The amount collected between 1980 and 1981 from [the store] was income to the business and there is no need to consider that in . . . these findings.

Defendant argues that the court's characterization of the lease income as plaintiff's salary is "simply a conclusion . . . not justified by the evidence." But mislabelling a conclusion of law as a finding of fact is harmless error if other facts provide sufficient support. *Wheeler* v. *Department of Employment Security*, 139 Vt. 69, 72, 421 A.2d 1315, 1316 (1980). Here, the court's determination that the lease income constituted salary to plaintiff is adequately supported by the findings regarding plaintiff's management and contribution. These findings are grounded on credible evidence in the record: the parties' accountant testified that Mr. Burr was "an astute manager" and that Mrs. Burr "had very little at all to do with the store." Defendant's modifying evidence on this issue must be disregarded. *Vieweger*, 144 Vt. at 632, 481 A.2d at 1270. There was no error. Defendant also questions another portion of Finding No. 35, noting that the court's second allusion to lease income refers to the years 1982-84 instead of 1982-85. This type of obvious mistake involving dates does not rise to the level of reversible error. *Gardner* v. *West-Col, Inc.*, 136 Vt. 381, 384, 392 A.2d 383, 385 (1978).

In a related argument, defendant maintains that the rental and lease income was not considered when the court divided the marital property. The fact that the court made no express reference in its order to the lease income or to the salary of either party does not establish that these amounts were omitted from consideration, however.[2] The court stated that the "occupation, source and amount of income of each of the parties has been considered." We find no error here.

Finding No. 13 concerns the purchase of the clothing business. The court found, among other things, that $10,000 was put into the business and that $2,500 of this amount came from the parties' savings. On appeal, defendant argues that she brought the latter amount to the marriage and that the finding is erroneous. At trial, however, plaintiff testified that the $2,500 was taken from savings originally derived from the sale of the parties' mo-

---

[2] That part of the "income" representing 1980-81 rental payments from the clothing store was properly excluded from consideration because it was not income at all; instead, the rental arrangement was merely an accounting device involving the parties in their dual capacities as business tenants and landlords. The court's statement that the rental income was "income for the business" could have been more carefully worded; this finding was both adequate and supported by the evidence.

bile home. Defendant testified that she couldn't be sure about the source of these funds, and, to the extent that this testimony conflicts with plaintiff's, it must be disregarded as modifying evidence. *Vieweger*, 144 Vt. at 632, 481 A.2d at 1270. Defendant's challenge to Finding No. 22 fails in like manner. That finding related to the liquidation of the clothing store and stated that "the business' final sale produced money which the plaintiff used to pay a mortgage balance . . . $5,500 was left in cash which the plaintiff received." Defendant asserts that plaintiff actually retained $6,670 from the liquidation, and she cites an exhibit introduced at trial in support of that figure. We note that the trial exhibit constitutes modifying evidence, and that plaintiff's testimony supports the $5,500 figure adopted by the trial court.

Defendant also complains of the trial court's award of certain bank accounts to the person then in possession, arguing that no evidence as to the amounts in these accounts was presented at trial and that the court failed to make any findings regarding the accounts. But defendant testified as to the existence of these accounts, and she elected not to present any evidence as to their value. Instead, she stated that "[w]e're not talking about a substantial amount of money." Moreover, defendant herself asked the court to dispose of the accounts in the manner it did. Therefore, a finding of fact on this point was not essential to disposition of the cause, and the court was not required to make such a finding. See *Cota* v. *Town School District of Starksboro*, 144 Vt. 633, 635, 481 A.2d 1267, 1268 (1984).

In sum, we find no reversible error in the court's findings of fact or in the property disposition itself.

*Affirmed.*