2004 VT 43

### Lorie BOISCLAIR v. Daniel BOISCLAIR

[852 A.2d 617]

No. 03-211

¶ 1. May 12, 2004. Husband Daniel Boisclair appeals from the family court's final divorce order. He argues that the court erred in (1) distributing the marital property, (2) awarding spousal maintenance, and (3) awarding parent-child contact with the restriction that visits take place in Vermont. We affirm the parent-child contact award, reverse and remand the distribution of the marital property, and remand the spousal maintenance award.

¶ 2. Husband and wife were married in 1994. They have two children, Daniel, who is seven years old, and Lucas, who is two years old. Husband is twenty-eight years old and lives in Watervliet, New York where he is employed as a union painter. Wife is thirty-one years old and provides day care services out of her Vermont home. The parties separated in 2001, and wife initiated divorce proceedings. During the divorce hearing, the parties reached an agreement regarding the distribution of the marital assets and liabilities. They agreed that wife should keep the marital home, valued at $45,000, and she would be solely responsible for paying the $34,000 mortgage as well as a $6,000 medical lien on the property. The court notified the parties that it found this agreement inequitable and would likely reject it. The court provided the

parties with an opportunity to establish that their agreement was fair.

¶ 3. The court issued its final divorce order in February 2003. It awarded wife the marital home but rejected the parties' proposed distribution of debts associated with the property. The court ordered wife to bear primary responsibility for the payment of the mortgage, but it did not require her to hold husband harmless should she be unable to maintain payment of the joint debt. The court also ordered husband to pay the $6,000 lien attached to the property, which stemmed from medical treatment that he had received. The court determined that husband should pay wife $500 per month in maintenance for at least eight years. Finally, the court awarded father visitation with the children every weekend and specified that, unless otherwise agreed, the contact would occur in Vermont rather than New York. Wife filed a motion to amend the judgment, asking the court to set a schedule for husband's repayment of the $6,000 lien, and the court amended its order accordingly. Husband appealed.

¶ 4. Husband first argues that the court erred in rejecting the parties' agreement regarding the distribution of debts associated with the marital home. We agree. The trial court is authorized to equitably divide and assign marital property, and it may consider various statutory factors in making its decision. *Cabot v. Cabot*, 166 Vt. 485, 500, 697 A.2d 644, 654 (1997); 15 V.S.A. § 751. The court has broad discretion in considering these factors, and we will uphold its decision unless its discretion was abused, withheld, or exercised on clearly untenable grounds. *Semprebon v. Semprebon*, 157 Vt. 209, 215, 596 A.2d 361, 364 (1991). Nevertheless, the trial court's "discretion is narrowed ... where the parties have made an agreement to distribute all or part of their property." *Damone v. Damone*, 172 Vt. 504, 511, 782 A.2d 1208,

1214 (2001) (internal quotation marks and citation omitted).

¶ 5. We have a strong policy favoring voluntary agreements entered into by divorcing parties to settle the disposition of marital property. *Bendekgey v. Bendekgey*, 154 Vt. 193, 197, 576 A.2d 433, 435 (1990). When distributing the marital property, the "trial court should give great weight to any agreements between the parties." *Lewis v. Lewis*, 149 Vt. 19, 22, 538 A.2d 170, 172 (1987). Pretrial agreements are contracts, and as such they are presumed to be fair, formal, and binding. *Damone*, 172 Vt. at 511, 782 A.2d at 1214. Thus, we have previously held that they can be set aside only for grounds sufficient to set aside a contract: fraud, unconscionable advantage, impossibility of performance, hampering circumstances beyond the expectations of the parties, collusion, or duress. *Bendekgey*, 154 Vt. at 198, 576 A.2d at 436; *Burr v. Burr*, 148 Vt. 207, 209, 531 A.2d 915, 917 (1987). Further, the record must demonstrate a compelling reason for the court not to accept the parties' pretrial agreement. *Kanaan v. Kanaan*, 163 Vt. 402, 413, 659 A.2d 128, 135 (1995).

¶ 6. Here, the parties informed the court that they had come to a verbal agreement as to the property division. Pursuant to the proposed agreement, wife would get the marital home subject to the outstanding mortgage and husband's medical lien. After reviewing its terms, the court gave the parties notice that it was having trouble with the equity of the parties' agreement, stating, "We don't think we are going to accept it." The court explained that the marital estate had a very low value and the proposed agreement did not appear to take mother's contribution as a homemaker into account. The court also expressed concern that the parties' minor children would suffer the consequences of wife's assumption of the debt. The court allowed the parties the opportunity to present evidence as to why their agree-

ment was fair. The court ultimately rejected the agreement, relying instead on the factors set out in 15 V.S.A. § 751 to divide the marital property. In so doing, the court abused its discretion.

¶ 7. In this case, none of the established grounds to reject a pretrial agreement are present. See *Burr*, 148 Vt. at 209, 531 A.2d at 917 (trial court may reject pretrial agreement when there is evidence of fraud, unconscionable advantage, impossibility of performance, hampering circumstances beyond the expectations of the parties, collusion, or duress). Both parties entered into the agreement voluntarily, and the fact that both were represented by counsel militates against findings of unconscionable advantage. There is no evidence that the parties were pressured to reach an agreement before trial. Cf. *Burr*, 148 Vt. at 209, 531 A.2d at 917 (court properly set aside agreement after acknowledging that court had put undue pressure on parties to reach an agreement). The fact that wife would have been entitled to have her contributions as homemaker factored in under § 751 if the court had conducted the property distribution cannot be grounds to reject a private agreement. See *Bendekgey*, 154 Vt. at 197-98, 576 A.2d at 435-36 (pretrial agreements will not be lightly set aside because they represent "the product of bargaining in which both parties have given up positions, rights or entitlements in order to reach a compromise"). Even if the distribution was not entirely fair to wife, both parties entered into the agreement voluntarily, and the fact that wife might have negotiated a more advantageous bargain is not grounds to set aside an otherwise valid agreement. See *Kanaan*, 163 Vt. at 413, 659 A.2d at 136. Therefore, we reverse the court's distribution of the marital property and remand for redistribution consistent with the terms of the pretrial agreement.

¶ 8. Husband next argues that the court erred in awarding wife mainte-

nance of $500 per month.[1] He asserts that because the trial court improperly rejected the parties' property settlement, the issue of spousal maintenance must be relitigated as well because both issues are linked by statute. Husband speculates that "the negotiations leading to the property settlement may have included discussions about spousal maintenance." There is no evidence in the record that this was the case and, in any event, in matters of maintenance, the family court is not bound by a stipulation of the parties. *Hall v. Hall*, 124 Vt. 410, 411-12, 206 A.2d 786, 787-88 (1964). Nevertheless, we agree that the remand of the court's property distribution requires remand of the spousal maintenance award, although for different reasons than those stated by husband.

¶ 9. Our prior cases have noted the necessary connection between disposition of marital property and maintenance awards. Pursuant to 15 V.S.A. § 752(a)(1), the family court is required to consider the property awarded under § 751 when determining whether the spouse seeking maintenance has sufficient property and/or income to meet his or her reasonable needs following divorce. Thus, re-

---

[1] Husband also asserts that the court erred by not specifying whether the spousal maintenance was permanent or rehabilitative. We agree that the court erred in not being more specific. The implication from the final order is that it is rehabilitative, in that it ordered the spousal maintenance to "continue for a period of at least 8 years." We have previously held, however, that when rehabilitative maintenance is appropriate, "the court must impose a time limit." *Cleverly v. Cleverly*, 147 Vt. 154, 159, 513 A.2d 612, 615 (1986). This Court will remand for clarification if there is uncertainty on whether a spousal maintenance award is permanent or rehabilitative. See *id.* at 160, 513 A.2d at 615.

mand on the property division requires a remand on the maintenance decision. See *Downs v. Downs,* 154 Vt. 161, 168, 574 A.2d 156, 159 (1990) (noting that property and maintenance decisions are so closely related that both matters must be reconsidered on remand); *DeGrace v. DeGrace,* 147 Vt. 466, 470, 520 A.2d 987, 990 (1986) (same). Indeed, in this case the new allocation of property and debt under the terms of the pretrial agreement necessarily requires addressing the concerns expressed by the trial court regarding the agreement. As the court noted, the marital estate has a low value, and wife is assuming a considerable amount of debt that may leave her in a difficult financial situation where she is unable to provide for her reasonable needs and those of her children. By remanding the maintenance award, we give the trial court the opportunity to exercise its wide discretion in remedying any possible inequity resulting from the enforcement of the pretrial agreement. See 15 V.S.A. § 752(b)(1); *Naumann v. Kurz,* 152 Vt. 355, 357, 566 A.2d 1342, 1343 (1989) (trial court has wide discretion to determine needs of both parties, and amount and duration of award). Therefore, we remand the spousal maintenance award.[2]

¶ 10. Husband's final argument is that the court abused its discretion by prohibiting him from having parent-child contact in New York, which he argues would be beneficial to the children. The family court has broad discretion in determining what course of action is in a child's best interests. See *Myott v. Myott,* 149 Vt.

573, 578, 547 A.2d 1336, 1339 (1988). The pattern of visitation adopted will not be reversed unless the court's discretion "was exercised upon unfounded considerations or to an extent clearly unreasonable upon the facts presented." *Cleverly v. Cleverly,* 151 Vt. 351, 355-56, 561 A.2d 99, 102 (1989) (internal quotation marks omitted). Here, the court awarded husband contact with the children every weekend with the restriction that the visits take place in Vermont. As the court found, husband lives in New York with his girlfriend, a three and one-half to four hour one-way commute from wife's home in Vermont. Wife presented evidence that husband was abusive to her and to their oldest son. Evidence was also presented that husband has sworn at wife in front of the children and threatened to punish the children if they did not show him affection. The parties' younger son has been upset over contact with husband. Based on the evidence presented, the court concluded that "the idea of weekly visitation going back and forth to New York or bi-weekly visitation going back to New York" would be too difficult for the children. We find no abuse of discretion in the court's parent-child contact order.

*The disposition of marital property is reversed and remanded for redistribution consistent with the terms of the pretrial agreement, the spousal maintenance award is remanded, and the parent-child contact order is affirmed.*

_____

[2] Alternatively, husband argues that the evidence did not support the trial court's finding that husband's income was higher than that found by a magistrate judge in the parties' child support hearing. Because we remand for a new determination of the spousal maintenance award, we do not reach this issue.