**VERMONT SUPREME COURT**
109 State Street
Montpelier VT 05609-0801
802-828-4774
www.vermontjudiciary.org

Case No.      25-AP-359



*Note: In the case title, an asterisk (\*) indicates an appellant and a double asterisk (\*\*) indicates a cross-appellant.  Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

MAY TERM,   2026

| | |
|---|---|
| Courtney Spaulding v. Edward Spaulding\* | }  APPEALED FROM: |
| | }  Superior Court, Washington Unit, |
| | }  Family Division |
| | }  CASE NO. 24-DM-02923 |
| | Trial Judge: Kirstin Schoonover |

In the above-entitled cause, the Clerk will enter:

Husband appeals from the trial court's final divorce order.  We affirm.

Following a contested hearing held over two days, the trial court made the following findings.  The parties married in August 2020 and separated in September 2024.  Wife is twenty-nine years old and in good health.  Husband is forty-seven years old and has been diagnosed with long COVID.  Husband stopped working in 2022 and applied for disability.  The court found it unclear why husband was not currently employed and noted that little evidence was presented concerning his current health and ability to work.  The parties relied on wife's student loans to pay their monthly expenses between 2022 and 2024.  They lived in a home titled in husband's name that husband had acquired years before the marriage.

Wife is a full-time PhD candidate and expects to finish her program in August 2026.  Wife actively cared for husband throughout the marriage and helped him with various tasks.  Wife also tended to the household duties, as well as cooking and cleaning.  Wife worked as an intern for husband's nonprofit between 2020 and 2024.  When the parties separated, wife started her own practice called CLS Counseling PLLC.

The parties' marriage deteriorated over time in part because husband became increasingly controlling and demanding.  Husband showed no insight or gratitude toward wife for the work she put into the marriage and the assistance she provided him.  Wife established and ran a farm on the marital property; the farm had a variety of livestock, including goats.  In the fall of 2024, husband told wife that the animals were no longer welcome on the property and she needed to remove them.  Wife had to sell the goats at a reduced price given the time of year.  The court rejected as unreasonable husband's request for reimbursement for what he believed the goats were worth given that wife sold the goats at his request and insistence.

The marital home was the subject of two lawsuits brought by third parties: the "container litigation" and the "Shea litigation." The first suit had been resolved with husband ordered to pay $15,000. The second suit remained ongoing. Both husband and wife were named defendants in that case, which involved a plaintiff's request for compensation for a damaged waterline.

Wife had approximately $404,000 in student loan debt in her name. She asked that husband be responsible for approximately $5500 of this debt as his share of household expenses.[*] Wife agreed to be responsible for the remaining debt. Husband also helped pay for household expenses and he sought reimbursement for payments he made toward the household expenses. Husband testified that he too had taken out student loans during the marriage that he used for the parties' living expenses. The court found that husband took out student loans of approximately $53,000 during the marriage. Husband argued that wife borrowed from his student loan money to pay for her residencies, apparently connected with her PhD program, and he sought reimbursement of these funds.

Husband also asked that wife reimburse him $105,893 for various debts, such as legal fees in the civil suits referenced above, credit card debt, and counseling he had obtained. He also sought an additional $22,500, which he argued was his share of the fair market value of the goats that were sold; rental income from the time wife lived with him in the marital home; and one-half of a $12,000 loan that he received from his mother to cover legal fees in the civil litigation. Husband believed that wife owned property in Alabama, which wife denied.

Based on these and other findings, the court considered the factors set forth in 15 V.S.A. § 751(b) and divided the marital property as follows. Husband was awarded, without objection from wife, the farm business and the marital home. The key disagreement was each party's request to be compensated for debt incurred during the marriage. The court considered it equitable to award each party the debt listed in their own names. It explained that this was a short-term marriage; neither party was currently working; wife was younger than husband and had many more years of work ahead of her; and husband received the primary assets of the marriage—the marital home and the farm—from which he could obtain future income if he so chose. The court held each party responsible for the student loan debt in their names. It found that while wife may have contributed more to household expenses, she was far younger than husband. She was currently a full-time student but had more years in which to acquire future assets.

The court rejected husband's assertion that wife owed him future lost income because she sold the goats, considering this argument speculative and unrealistic. It also rejected husband's requests for lost rental income during wife's stay in the marital home, lost earnings for quitting his employment post-marriage, and damages related to fencing for the goats. The court considered these requests overreaching and ultimately inequitable in light of the statutory factors set forth in 15 V.S.A. § 751. The court additionally rejected husband's request that wife compensate him for costs incurred in the civil litigation. The court explained that these were costs associated with defending the marital property, which the court awarded to husband. Husband, not wife, would be solely responsible for any costs or judgments associated with the civil litigation and wife was foregoing any marital interest in the property, allowing husband to receive the most significant asset in the marriage. Husband now appeals.

---

[*] The parties agree on appeal that this number should be $54,000, not $5500.

We apply a well-established standard of review. The family court is authorized to equitably divide and assign marital property, and it may consider various statutory factors in making its decision. Cabot v. Cabot, 166 Vt. 485, 500 (1997); 15 V.S.A. § 751. "As we have often noted, property division is not an exact science, and the trial court has broad discretion in considering the statutory factors and fashioning an appropriate order." Cabot, 166 Vt. at 500. The party claiming an abuse of discretion bears the burden of "show[ing] that the court failed to carry out its duties." Field v. Field, 139 Vt. 242, 244 (1981). On review, we will uphold the court's findings of fact "unless, viewing the evidence in the light most favorable to the prevailing party and excluding the effect of modifying evidence," there is no credible evidence in the record to support them. Semprebon v. Semprebon, 157 Vt. 209, 214 (1991). "[I]t is not the role of this Court to reweigh the evidence or assess the credibility of witnesses; such decisions are left to the trial court as the trier of fact." Sweet v. St. Pierre, 2018 VT 122, ¶ 13, 209 Vt. 1.

The question for our review is whether the court abused its discretion in dividing the marital estate. Husband's attorney includes in his brief various arguments that are irrelevant to this question, including his allegations that the trial judge and opposing counsel violated the Rules of Professional Conduct. He repeatedly accuses wife, her attorney, and judges of bad-faith conduct. We caution counsel about his use of hyperbole and inflammatory language. "[I]t is vital to the integrity of our adversary legal process that attorneys strive to maintain the highest standards of ethics, civility, and professionalism in the practice of law." In re S.C., 41 Cal. Rptr. 3d 453, 468 (Ct. App. 2006) (quotation omitted). Counsel's assertions are unhelpful and unnecessary to his arguments on appeal. See id. at 470, 475 (explaining that "[w]hile exaggeration may not violate rules of court and standards of review, it is not an effective tool of appellate advocacy" and "[d]isparaging the trial judge is a tactic that is not taken lightly by a reviewing court"). While counsel disclaims any familiarity with family law practice or the practice of law in general in Vermont courts, as an attorney who chose to represent husband in this matter, he is expected to comply with the rules in his submissions to this court. See, e.g., V.R.C.P. 11. We reject counsel's assertion that this Court should "apply its Rule 2 discretion [to suspend the rules] in areas where counsel's lack of familiarity with Vermont's Rules or procedures may result in unintended mistakes as to form, misunderstanding the law or otherwise."

Husband also challenges various trial court findings as clearly erroneous. He asserts that the court erred in finding that wife asked him to pay $5500 of her student loan debt when in fact she testified that she wanted him to pay $54,000. Any error in this finding is harmless as the court denied wife's request and directed that each party be responsible for the student loans in their name. See Hogel v. Hogel, 136 Vt. 195, 198 (1978) ("When a party objecting to a finding was not harmed by the alleged error in the finding, the objection will not be considered."). Husband next asserts that he was not in fact seeking rental income from wife for the time in which she resided in the marital home during the marriage. There is evidence in the record to support this finding, however, as wife testified that she was "told to leave with the goats or pay rent." In any event, any error is harmless because the court did not award any rental income to husband nor did the court's perception about the rental income issue matter to the court's analysis or final decision. Husband also challenges the court's finding that the parties used wife's student loans to pay their living expenses. He cites his own testimony and exhibits in support of this argument. Wife testified that the parties used her student loans for living expenses and the court credited her testimony. The court's finding is supported by the evidence, and it is not the role of this Court to reweigh the evidence on appeal. Sweet, 2018 VT 122, ¶ 13. We note that, in any event, the court also recognized in its decision that husband had contributed to household expenses. We also reject husband's assertion that the court should have credited

3

his assertion that wife owned real estate in Alabama. He again cites his own testimony in support of his position, which is at odds with our standard of review. The court did not credit husband's testimony on this point.

Husband next argues that the court erred in finding that the parties had no joint debts. He relies on exhibits he submitted at trial, including an affidavit from his mother and a document entitled "Summary of Costs Paid and/or Debts Incurred." This document contains husband's position on various debts that the court considered in its decision, such as the goat sales, counseling costs, civil litigation involving the marital home, and other matters. The parties argued over whether there were any joint debts at the hearing. The court considered these arguments and the appropriate allocation of these costs and debts in its decision. While husband disagrees with the court's decisions with respect to the items, he fails to show any abuse of discretion. See, e.g., Meyncke v. Meyncke, 2009 VT 84, ¶ 15, 186 Vt. 571 (mem.) (explaining that arguments which amount to nothing more than a disagreement with court's reasoning and conclusion do not make out a case for an abuse of discretion). Husband also appears to argue that wife claimed an interest in the marital home but he provides no record support for this assertion, nor does he explain the significance of such an assertion. See In re S.B.L., 150 Vt. 294, 297 (1988) ("It is the burden of the appellant to demonstrate how the lower court erred warranting reversal. We will not comb the record searching for error.").

Husband next raises general arguments concerning the court's assessment of the credibility of wife's testimony, including whether the court should have required her to support her testimony with other evidence. We reject these arguments because they are once again inconsistent with our standard of review. Husband further contends that the court should have credited his argument about wife and her attorney committing fraud on the court related to the Shea litigation. He argued at the divorce hearing that a particular exhibit showed that wife and her attorney prevented him from settling the Shea litigation unless husband gave up certain rights in the divorce case and alleged that this document showed that they committed a fraud on the court. The court acknowledged that it understood husband's argument and that it appeared to relate to the Shea litigation, and not to the question of distributing the marital estate. Whatever might occur in the Shea litigation, the court explained that it could only award the marital home (which was involved in the Shea litigation) to one party and the parties agreed that husband would receive the home. Husband fails to show how his claim of error with respect to this exhibit would require reversal in this case, and we reject this argument.

Husband next raises various procedural complaints. He argues that the court unfairly truncated his cross-examination of wife. The record does not support this assertion. Vermont Rule of Evidence 611(a) directs the court to "exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation orderly and effective for the ascertainment of the truth, (2) avoid needless consumption of time, and (3) protect witnesses from harassment or undue embarrassment." The court acted consistently with the rule here. It informed husband that certain inquiries were irrelevant to the issues before the court and encouraged him to use his time on issues that were relevant. Husband fails to show that he was denied an adequate time to cross-examine witnesses and present his case.

Husband next complains that the court did not allow his mother to testify when she arrived late to the hearing. He argues that the hearing was noticed as starting at 1 p.m. rather than 9 a.m. In fact, the record shows a correct hearing notice was issued to the parties on July 22, 2025, setting the date for the September 3 hearing at 9 a.m.; husband does not acknowledge

this document.  Husband also does not identify where in the record the court made any ruling concerning mother's late appearance.  He cites pages from the July 2025 hearing, but they do not contain any such ruling.  The record indicates that husband admitted statements from his mother at the July 2025 hearing and he fails to show that the court erred with respect to any effort to present his mother's in-person testimony.  While he claims that several of mother's statements were omitted from the Appeal Volume, he does not explain what these statements were, how they show that the court's distribution of the marital estate was inequitable, or that the court abused its discretion.  It is his burden to do so.  See In re S.B.L., 150 Vt. at 297.

Husband next accuses the trial judge of acting in bad faith and violating ethical rules by making findings without evidentiary support.  We have rejected the premise of this argument above.  In any event, this is not the appropriate forum in which to raise claims of ethical violations, and we do not address this argument further.

Finally, husband complains about the composition of the Appeal Volume and a Justice's procedural rulings about the Appeal Volume.  He suggests that there is a due process issue with respect to what documents were included.  He fails to show any specific harm that resulted from these alleged errors that affects the result in this case, however, and we reject this argument.  Moreover, husband's disagreement with a Justice's procedural rulings about the Appeal Volume and briefing deadlines is not evidence of bias, as husband suggests.  See Gallipo v. City of Rutland, 163 Vt. 83, 96 (1994) (stating that judicial bias cannot be demonstrated based on adverse rulings alone); Ball v. Melsur Corp., 161 Vt. 35, 45 (1993) (stating that "bias or prejudice must be clearly established by the record," and "that contrary rulings alone, no matter how numerous or erroneous, do not suffice to show prejudice or bias"), abrogated on other grounds by Demag v. Better Power Equip., Inc., 2014 VT 78, 197 Vt. 176.  In any event, his request that Justice Waples sua sponte disqualify herself from this case is denied as moot because she is not a member of the panel.

We have considered all of the arguments discernable in husband's brief that are relevant to the issues properly before the Court in this appeal and consider them all without merit.  The court did not err in dividing the marital estate.

Affirmed.

BY THE COURT:

Harold E. Eaton, Jr., Associate Justice

Christina E. Nolan, Associate Justice

Michael P. Drescher, Associate Justice